IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE ACCOUNT THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC. | Case No. 24-mj-108-01-AJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ronald Morin, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) and have been since May 2006. I am currently assigned to the Manchester, New Hampshire field office. As part

of my regular duties as an agent, I investigate criminal violations relating to a broad range of immigration and customs related statutes, including those relating to child exploitation, child pornography, and human trafficking. I have received training in the area of child pornography and child exploitation, and as part of my duties have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. §2256) in various forms of media, including digital/computer media. I have conducted investigations and executed search warrants involving child exploitation and child pornography offenses.

3.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. § 2423(a) (transportation with intent to engage in criminal sexual activity) has been committed by Jesus Moore. There is also probable cause to search the information described in Attachment A for evidence or instrumentalities of these crimes further described in Attachment B.

## JURISDICTION

5.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.  On October 17, 2023, Person 1 called SafeSport, an "independent nonprofit committed to building a sport community where participants can work and learn together free of

emotional, physical and sexual abuse and misconduct,"[1] to report an incident of suspected misconduct. Person 1 reported that Victim 1, who was 16 at the time, was a basketball manager and randomly quit sometime between 2020-2022. Person 1 reported hearing that one of the coaches was taking advantage of the managers on the team. Person 1 spoke to Victim 1 who confirmed that a coach had taken advantage Victim 1. Person 1 identified the coach as Jesus Moore, the head basketball coach and physical education teacher at North High School in Lawrence, Massachusetts. Person 1 further reported that Moore got Victim 1 drunk and raped Victim 1.

7.      On February 13, 2024, law enforcement officers interviewed Victim 1. Victim 1 said that they were the basketball team manager while in high school between 2021 and 2022. Victim 1 explained that their role was to ensure that the team had water and to help with keeping the score book. Victim 1 said that the role required them to be at all practices and games, and that Victim 1 would ride the bus with the team for away games. Victim 1 reported that Moore began to text Victim 1 and would ask Victim 1 to hang out.

8.      Victim 1 eventually agreed to hang out with Moore and, on March 7, 2022, Moore told Victim 1 that Moore arranged a ride for them by Uber and said Victim 1 would receive a link on Victim 1's cellphone when it was arriving. At the time, Victim 1 was in Massachusetts. Victim 1 got into the Uber and said that it took her to a hotel that she believed was in New Hampshire. Victim 1 said Moore told them to walk past the front desk and turn left, and that Moore would meet Victim 1 at the end of the hallway by the stairs. From there, Moore

---

[1] Preventing and Addressing Abuse | U.S. Center for SafeSport (uscenterforsafesport.org)

3

led Victim 1 into a hotel room and gave Victim 1 Patron to drink. I know Patron to be a brand of tequila. Victim 1 described feeling as though "everything felt numb" and having blurred vision.

9. Victim 1 reported that Moore took of Victim 1's clothes, and all of Moore's clothes except for a "muscle shirt." Victim 1 reported that Moore put his penis in their mouth and penetrated Victim 1's vagina. Victim 1 later asked Moore where he ejaculated and Moore replied, "You don't remember? You cleaned it up." Victim 1 reported that Moore dressed Victim 1 and sent Victim 1 home to Massachusetts in an Uber with the Patron bottle and a new pair of Apple Airpods.

10. Victim 1 showed the officers a photograph on her phone that depicted a Patron bottle and the top of a box that is consistent with a box that Apple Airpods come in. The image was dated March 7, 2022, at 8:05 pm. Victim 1 identified Moore's number as a number ending in 3366 (the "Subject Phone").

11. Victim 1 reported that sometime in August of 2023, Victim 1 saw Moore in public and was "triggered" by seeing him. Victim 1 stated that Victim 1 sent a text message to Moore asking Moore for money to help Victim 1 with school costs. Victim 1 stated that Victim 1 "threatened" Moore by acknowledging to Moore that Moore would face significant consequences if Victim 1 reported Moore. Victim 1 reported that Victim 1 received a response from an email address that came through as an iMessage. The email address showed the sender as elevatedthoughts01@icloud.com. The message reads: "If you need help with something just ask. No need for all the extra. Let me know how I can help or what you need. Give me some time and then we will meet. Hope everything is good with you." Victim 1 reported that an envelope with her name on it was placed in her mailbox. The envelope contained approximately $500 in cash.

12. An officer with the Lawrence Police Department learned that school records indicate that Moore was absent from work, marked as sick, on March 7, 2022.

13. That same officer learned that school attendance records indicate that Victim 1 arrived late for school on March 7, 2022. Those records do not reflect an early dismissal. I understand from that officer that only authorized early dismissals appear on those records; leaving school early without permission would not be documented on school records.

14. On December 12, 2024, two officers interviewed Moore at the Lawrence Police Department. Officers reviewed Moore's *Miranda* rights with Moore, Moore acknowledged that he understood those rights and agreed to talk to the officers. Initially, Moore said that he did not recall ever ordering an Uber for Victim 1 to take her to a hotel in New Hampshire. He then said he "could possibly" have ordered Victim 1 an Uber to New Hampshire. Moore said he felt like he should have a lawyer present before he answered more questions and officers ended the interview.

15. Records from the Super 8 Motel in Manchester, New Hampshire, show that an individual named Jesus Moore rented a room for a one-night stay on March 7, 2022. The records identify a Cadillac Escalade, with registration F-O-E, as associated with the reservation.

16. According to New Hampshire vehicle registration information, Jesus Moore, with an address in Salem New Hampshire, has a Cadillac Escalade bearing New Hampshire registration F-O-E registered to him.

17. An officer with the Manchester Police Department obtained a warrant for Uber records relating to any accounts belonging to Moore. Those records identify an account with a display name of Jesus Moore, the number associated with the Subject Phone, an email address of

jesusmoore4@gmail.com (the Subject Account), and device information as an iPhone 15.2 with an operating system of ios 17.1.2.

19. According to records received from Google, the subscriber of the Subject Account is Jesus Moore and the phone number associated with the account is the number associated with the Subject Phone.

19. According to records received from Verizon, the subscriber of the Subject Phone is Jesus Moore, and Jesus Moore has been the subscriber of the Subject Phone since at least September 1, 2021.

20. According to records received from Apple, the subscriber of elevatedthoughts01@icloud.com is Jesus Moore, and the phone number associated with the iCloud account is the Subject Phone.

## **BACKGROUND CONCERNING APPLE**[2]

21. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

22. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

---

[2] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Manage and use your Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "Introduction to iCloud," available at https://support.apple.com/kb/PH26502; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; and "Apple Platform Security," available at https://help.apple.com/pdf/security/en_US/apple-platform-security-guide.pdf.

    a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

    b. iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

    c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

    d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

  e. Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

  f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

  g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

  23. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be

linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

24.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

25.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "capability query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the "Find My" service, including connection logs and requests to remotely find, lock, or erase a device, are also maintained by Apple.

26.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP

9

address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

27.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Some of this data is stored on Apple's servers in an encrypted form but may nonetheless be decrypted by Apple. Records

and data associated with third-party apps, including the instant messaging service WhatsApp, may also be stored on iCloud.

28.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

29.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation, particularly here, where an iCloud account associated with Moore was used to send a message to Victim 1.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

30.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access

the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

31. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32. Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App Store and iTunes Store, like Uber, may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators or Victim 1.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of evidence and instrumentalities of the crimes under investigation.

33. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

34. Based on the forgoing, I request that the Court issue the proposed search warrant.

35. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Apple.  Because the warrant will be served on Apple, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

>Respectfully submitted,
>
>/s/ Ronald Morin
>Ronald Morin, HSI, Special Agent

Sworn to me by telephone in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure on this \_\_\_16th\_\_\_ day of May, 2024.

>_____
>HONORABLE ANDREA K. JOHNSTONE
>UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with elevatedthoughts01@icloud.com that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.   **Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government for the account listed in Attachment A from February 1, 2022 – September 23, 2023:

a.   All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.   All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

   c. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

   d. The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

   e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

   f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging

and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

   g. All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;

   h. All records pertaining to the types of service used;

   i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

   j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within fourteen days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. § 2423(a) (transportation with intent to engage in criminal sexual activity), those violations involving Jesus Moore, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. Communications between Moore and Victim 1;

b. Evidence regarding preparatory steps taken in furtherance of the criminal activity and steps taken upon completion of the criminal activity, including renting a hotel room, ordering an Uber for Victim 1, and making payments to Victim 1;

c. Evidence regarding interactions with Victim 1;

d. Evidence regarding the purchase or ownership of Apple Airbuds;

e. Communications about Victim 1 and about the criminal activity;

f. Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

g. Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

h. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

i. The identity of the persons who communicated with the user ID about matters relating to the criminal conduct, including records that help reveal their whereabouts.

### CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Apple Inc. ("Apple"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Apple. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Apple, and they were made by Apple as a regular practice; and

b. such records were generated by Apple's electronic process or system that produces an accurate result, to wit:

   1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Apple in a manner to ensure that they are true duplicates of the original records; and

   2. the process or system is regularly verified by Apple, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____   _____

Date                                     Signature